OPINION
{¶ 1} Defendant, Jeremiah "Sonny" Nowden, appeals from his conviction and sentence for felonious assault, having weapons while under a disability, and improperly discharging a firearm at or into a habitation.
 {¶ 2} On March 27, 2007, Willie Thomas and his brother, *Page 2 
Keith Thomas, and Defendant Nowden were at the residence of Starlina Gevedon at 1011 Summer Street in Springfield. After discovering that his handgun was missing and arguing with the Thomas brothers about this lost gun, Defendant left in his white Cadillac, but returned ten to fifteen minutes later with another handgun. Defendant shot Keith Thomas and Willie Thomas. Defendant then walked to his white Cadillac and reloaded his gun. Defendant saw Starlina Gevedon run inside her residence while talking on the phone with police. Defendant fired several shots into the residence, striking Gevedon in the back.
 {¶ 3} While on the phone with police, Gevedon identified Defendant by name as the shooter and indicated he was a tall, light skinned black male, who was driving a white Cadillac. Keith Thomas, Willie Thomas and a witness, Moniek Brown, also identified Defendant as the shooter. A neighbor, Sarah Banks, identified the shooter as a tall, lanky black man who had identified himself to her earlier that evening as "Sonny."
 {¶ 4} Springfield police officer Nicholas Holt was two blocks away from the scene of the shooting when he received a dispatch regarding three people who had just been shot at 1011 Summer Street. When Officer Holt responded to the scene thirty seconds later, he observed a crowd of people on the *Page 3 
sidewalk who were frantically yelling and pointing at a white Cadillac driving away. The people were screaming, "That's the car. That's the shooter." Officer Holt followed the white Cadillac for several blocks until it pulled to the curb and stopped on Elder Street near Buckeye Street. Officer Holt turned on his overhead emergency lights and pointed his gun at Defendant, telling him to stay in the vehicle with his hands up.
 {¶ 5} Other officers arrived on the scene and Defendant was removed from his vehicle. Without being asked any questions, Defendant made incriminating statements, including, "It's under the seat," and "I shot them. Kid, Keith and CC, baby, I shot them." Police looked under the driver's seat and discovered a handgun.
 {¶ 6} Defendant made further statements at the scene of his arrest while talking to his girlfriend on his cell phone, which were captured on police voice recorders, including an admission that he had shot three people. Swabs of Defendant's hands for gunshot residue revealed that Defendant could have fired a weapon, could have been in the vicinity of a weapon being fired, or could have handled an item that had gunshot residue on it. All three victims required surgery for their bullet wounds. At the time of this shooting, Defendant was on *Page 4 
probation for aggravated assault.
 {¶ 7} Defendant was indicted on three counts of felonious assault, R.C. 2903.11(A)(2), each with a three year firearm specification per R.C. 2941.145, one count of having weapons while under a disability, R.C. 2923.13(A)(2), and one count of improperly discharging a firearm at or into a habitation, R.C. 2923.161(A)(1). Defendant filed a motion to suppress his statements and the handgun recovered from his vehicle. Following a hearing, the trial court overruled Defendant's motion to suppress. Defendant was found guilty following a jury trial of all charges and specifications. The trial court sentenced Defendant to consecutive prison terms totaling forty-six years.
 {¶ 8} Defendant timely appealed to this court from his convictions and sentences.
FIRST ASSIGNMENT OF ERROR
 {¶ 9} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS."
 {¶ 10} Defendant argues that the trial court erred in overruling his motion to suppress because police lacked the reasonable suspicion of criminal activity necessary to justify a Terry investigative stop and detention, when the tip police acted upon was from unnamed, anonymous informants and was not *Page 5 
corroborated by the police, and therefore the tip did not exhibit sufficient indicia of reliability to create a reasonable suspicion of criminal activity. Defendant does not separately argue any issue with respect to the incriminating statements that he made after police stopped him.
 {¶ 11} In a motion to suppress, the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.State v. Clay (1972), 34 Ohio St.2d 250. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. State v. Retherford (1994),93 Ohio App.3d 586; State v. Satterwhite (1997), 123 Ohio App.3d 322.
 {¶ 12} In overruling Defendant's motion to suppress, the trial court made the following findings of fact:
 {¶ 13} "On March 27, 2007, from 1011 Summer Street, Springfield, Clark County, Ohio, Starlina Gevedon called 911 and informed the dispatcher that someone just got shot in the chest. She identified the victim as a man named `Keith' and *Page 6 
the shooter as `Sonny,' or `Jeremiah.' While on the phone with the dispatcher, Starlina frantically stated something along the lines of, `Oh my God he's coming in my house!' Immediately thereafter, she screamed to the dispatcher that she had just been shot in the back. She told the dispatcher that the shooter left the scene in a `white Caddy.' She testified that she did not herself see a white Cadillac but that a friend told her the shooter fled the scene in a vehicle with that description. She testified that she has known the defendant to operate a white Cadillac. She identified the defendant as the shooter in open court.
 {¶ 14} "Officer Holt was dispatched to the scene reference shots being fired and people hit. No description of the Defendant or his vehicle was relayed to officers by the dispatcher. As Officer Holt approached the scene on Summer Street, he observed several people on the sidewalk acting hysterical, pointing toward a white Cadillac, shouting `that's the car,' and `that's the shooter!' Officer Holt observed a white Cadillac and pursued it for a couple of blocks until the driver pulled over at the intersection of Elder and Buckeye Streets. The defendant was the driver of said vehicle and there were no passengers. Officer Holt testified that he believed the defendant to be the shooter and that he was *Page 7 
therefore armed and dangerous. He detained the defendant in the vehicle at gunpoint until other officers arrived.
 {¶ 15} "Upon the arrival of additional officers, the defendant was removed from the vehicle, leaving the driver's side door open. The Defendant was immediately handcuffed and detained. The Defendant stated to officers, `It's under the seat.' Officer Belcher then asked, `What?' The defendant responded, `The gun.' Officer Belcher leaned his head into the defendant's vehicle, penetrating the threshold of the passenger compartment, and observed a revolver under the driver's seat. The vehicle was eventually towed to City Wide Towing with the revolver in it.
 {¶ 16} "Officer Davis testified that the defendant stated, `I shot three people.' He further testified that the defendant made other statements, in his presence, while talking on his cell phone to his girlfriend. He testified that he overheard the defendant make the several incriminating statements while on the phone, which he was able to record with his digital recorder. Those statements included: `I shot them,' and `they stole my stuff.'
 {¶ 17} "The Officers never presented the defendant to the group of people on the sidewalk on Summer Street for a show-up identification. Nor did the officers ever go back and speak *Page 8 
with any of those individuals, or obtain their identities.
 {¶ 18} "The defendant was eventually transported to police headquarters where he was questioned by Detectives Baader and Dewine. The defendant asked Detective Dewine, `Am I going to need a lawyer?' The detectives advised the defendant of his Miranda warnings. The defendant agreed to talk and signed a written waiver. He then proceeded to give approximately a 50-minute statement."
 {¶ 19} Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to only a few well recognized exceptions.Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576. One of those exceptions is the rule regarding investigative stops, announced in Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889, which provides that a police officer may stop an individual to investigate unusual behavior, even absent a prior judicial warrant or probable cause to arrest, where the officer has a reasonable, articulable suspicion that specific criminal activity may be afoot.
 {¶ 20} An officer's inchoate hunch or suspicion will not justify an investigatory stop. Rather, justification for a particular seizure must be based upon specific and articulable facts which, taken together with the rational inferences from *Page 9 
those facts, reasonably warrant that intrusion. The facts must be judged against an objective standard: "would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief that the action taken was appropriate?"Terry, 392 U.S., at 22. See, also, State v. Grayson (1991),72 Ohio App.3d 283.
 {¶ 21} Whether an investigative stop is reasonable must be determined from the totality of the circumstances that surround it. State v.Freeman (1980), 64 Ohio St.2d 291. The totality of the circumstances are "to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v.Andrews (1991), 57 Ohio St.3d 86, 87-88, citing United States v.Hall (C.A.D.C. 1976), 525 F.2d 857, 859.
 {¶ 22} When a police officer acts on information provided by other persons, instead of on his own observations, and the content of the information the officer is provided indicates that a crime has been committed, then the Terry issue presented is whether the information possessed a sufficient indicia of reliability to make the stop and detention appropriate and therefore reasonable. Adams v. Williams
(1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; Alabama v.White (1990), 496 U.S. 325, 110 S.Ct. 2412, *Page 10 110 L.Ed.2d 301. The reliability of information is enhanced when other facts and circumstances indicate no substantial risk of fabrication. LaFave, Search and Seizure (4th Ed.), § 9.5(h). A related consideration, when it applies, is that the special circumstances of the criminal activity concerned creates a need for immediate action.Sibron v. New York (1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.
 {¶ 23} Defendant argues that Officer Holt acted on a radio bulletin that lacked sufficient indicia of reliability when Officer Holt stopped Defendant's vehicle, because the information had been provided by an anonymous informant who called to report the shootings, and by persons in the crowd gathered on the street who were unknown to Officer Holt and whom he did not stop to interview. We do not agree.
 {¶ 24} "A police officer need not always have knowledge of the specific facts justifying a stop and may rely, therefore, upon a police dispatch or flyer." United States v. Hensley (1985), 469 U.S. 221, 231,105 S.Ct. 675, 681, 83 L.Ed.2d 604. 613. The issue is whether the officer acted in objective reliance on the information in the flyer or bulletin, whether the agency that issued it possessed a reasonable suspicion justifying the stop, and whether the stop was proportionate to the need the information presented. Id. *Page 11 
 {¶ 25} The call the police received was not an "anonymous tip" that lacked any apparent basis for the information the caller related.Adams v. Williams. The caller identified herself as Starlina Gevedon and gave a first-hand, eyewitness account of shootings that took place at a specific address. She also identified the shooter and the vehicle he used to drive away. That information provided the police agency a reasonable suspicion necessary for the stop of Defendant's vehicle.
 {¶ 26} Officer Holt acted in objective reliance on the bulletin he received. Arriving at the scene of the shooting only about thirty seconds after the dispatch, he encountered a crowd of persons, several of whom were highly agitated, who corroborated the report that shootings had occurred. They also pointed out the shooter's vehicle, which matched the description in the dispatch. An unnamed informant who flags down a police officer to provide information about criminal activity is not truly anonymous. State v. Ramey (1998), 129 Ohio App.3d 409. Furthermore, the number of persons involved and their agitated state demonstrated that there was no substantial risk of fabrication in the story they told, which corroborated the radio bulletin Officer Holt received.
 {¶ 27} The stop was also proportionate to the need the *Page 12 
information in the bulletin presented. Two serious crimes had been reported, and the alleged perpetrator was driving away with the weapon he reportedly used. Those special circumstances supported the need to stop Defendant's vehicle while a stop was yet possible, in order to investigate the crimes that had been reported.
 {¶ 28} The information on which Officer Holt acted in order to stop Defendant's vehicle bore sufficient indicia of reliability sufficient to justify a stop, and the facts available to Officer Holt when he stopped Defendant's vehicle would warrant a person of reasonable caution in the belief that the action the officer took was appropriate. Terry.
 {¶ 29} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 30} "THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF FELONIOUS ASSAULT WITH GUN SPECIFICATION."
 {¶ 31} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply is the one set forth in paragraph two of the Syllabus of State v.Jenks (1991), 61 Ohio St.3d 259: *Page 13 
 {¶ 32} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 33} Defendant was found guilty of felonious assault in violation of R.C. 2903.11(A)(2) which provides:
 {¶ 34} "No person shall knowingly do either of the following:
 {¶ 35} . . .
 {¶ 36} "Cause or attempt to cause harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 37} Knowingly is defined in R.C.2901.22(B):
 {¶ 38} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." *Page 14 
 {¶ 39} Defendant argues that the evidence is insufficient to support his convictions for felonious assault because of conflicting testimony that was offered at trial. Defendant and one witness, Jennifer Nguyen, testified at trial that a white male shot the victims in this case. According to Defendant, after the shooting, the white male gave Defendant the gun and then fled. Defendant refused to reveal the identity of this man out of fear for his family.
 {¶ 40} On the other hand, all three victims, Starlina Gevedon, Keith Thomas and Willie Thomas, and one witness, Moniek Brown, testified that Defendant first left Gevedon's residence after complaining that his gun was missing and that someone had taken it. A short time later, Defendant returned with another gun and shot Keith and Willie Thomas. Defendant then reloaded the gun and shot Starlina Gevedon. Sarah Banks, a neighbor, testified that the shooter was a tall, lanky black male, who had spoken to her earlier that evening and identified himself as "Sonny."
 {¶ 41} Viewing the totality of the evidence in this case, including the testimony of the victims, in a light most favorable to the State, as we must, we conclude that a rational trier of facts could find all of the essential elements of felonious assault to be proved beyond a reasonable *Page 15 
doubt. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 42} Defendant's second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 43} "THE JURY VERDICT SHOULD BE REVERSED BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 44} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 45} "[T]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 46} In order to find that a manifest miscarriage of justice occurred, an appellate court must conclude that a guilty verdict is "against," that is, contrary to, the *Page 16 
manifest weight of the evidence presented. See, State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not rise to that level.
 {¶ 47} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 48} "[B]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."
 {¶ 49} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03. *Page 17 
 {¶ 50} Defendant argues that his convictions for felonious assault are against the manifest weight of the evidence because of the conflicting testimony offered at trial discussed in the preceding assignment of error. The credibility of the various witnesses who testified at trial and the weight to be given to their testimony were matters for the trier of facts, the jury, primarily to decide. DeHass. The testimony of the three victims, Starlina Gevedon, Keith Thomas and Willie Thomas, and witness Moniek Brown, that Defendant returned to Gevedon's residence after an argument over whether someone had stolen his gun, and that Defendant shot the three victims, is not contrary to the guilty verdicts. The jury did not lose its way in this case simply because it chose to believe the State's witnesses rather than Defendant, which it had a right to do.
 {¶ 51} Reviewing the record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trial court lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 52} Defendant's third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR *Page 18 
 {¶ 53} "THE TRIAL COURT ERRED BY NOT PROVIDING A JURY INSTRUCTION ON AGGRAVATED ASSAULT."
 {¶ 54} Defendant argues that the trial court erred in failing to instruct the jury on aggravated assault, an offense of inferior degree to the indicted offense of felonious assault.
 {¶ 55} The trial record reveals that Defendant neither requested a jury instruction on aggravated assault nor objected to the trial court's failure to give that instruction, as Crim. R. 30(A) requires. Accordingly, Defendant has waived all but plain error. State v.Underwood (1983), 3 Ohio St.3d 12. Plain error does not exist unless it can be said that but for the error, the outcome of the trial clearly would have been different. State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 56} The elements of felonious assault, R.C. 2903.11, and aggravated assault, R.C. 2903.12, are identical except for the mitigating factor of serious provocation in aggravated assault. State v. Deem (1988),40 Ohio St.3d 205. That mitigating factor requires proof that Defendant acted under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that was reasonably sufficient to *Page 19 
incite the defendant into using deadly force. R.C. 2903.12. Defendant has the burden of proving the mitigating factor by a preponderance of the evidence. Deem, supra.
 {¶ 57} At trial, Defendant testified that he was not the person who shot the victims. Rather, a white male, whose identity Defendant refused to reveal out of fear for his family, came to the 1011 Summer Street residence in response to a call from Defendant for help in dealing with the occupants, who Defendant claimed had stolen his property. According to Defendant, the white male shot the three victims, and then handed Defendant the gun and told him to "bounce," meaning to leave. Defendant now argues on appeal that he acted under the influence of sudden passion or in a sudden fit of rage caused by provocation by the victims that was reasonably sufficient to incite Defendant into using deadly force.
 {¶ 58} Defendant's claim at trial that another person committed these shootings conflicts with the showing that R.C. 2903.12 requires, that the accused "acted" out of a serious provocation, and deprives Defendant of the right to the lesser included offense instruction. Moreover, the evidence shows that the incident that gave rise to this shooting was nothing more than a verbal argument between Defendant and the victims. *Page 20 
Defendant accused the victims of stealing his gun. The victims denied that accusation. Ordinarily, words alone will not constitute reasonably sufficient provocation to incite the use of deadly force. Deem;Shane.
 {¶ 59} Moreover, by his own testimony, Defendant left the residence at 1011 Summer Street for a period of time in order to "cool off." Defendant was gone from that residence for ten to fifteen minutes before he returned with a gun and shot the three victims. Such a cooling off period defeats the claim that Defendant acted in a sudden passion or sudden fit of rage. State v. Harber (Feb. 19, 1987), Cuyahoga App. No. 51758; State v. Huertas (1990), 51 Ohio St.3d 22.
 {¶ 60} The evidence in this case is insufficient to demonstrate the mitigating factor of serious provocation and justify a jury instruction on aggravated assault. The trial court did not err, much less commit plain error, in failing to give a jury instruction on aggravated assault.
 {¶ 61} Defendant's fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 {¶ 62} "THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO A MAXIMUM SENTENCE OF FORTY-SIX YEARS."
 {¶ 63} Defendant argues that the trial court abused its discretion in sentencing him to maximum and consecutive *Page 21 
sentences.
 {¶ 64} Defendant was found guilty of three counts of felonious assault, felonies of the second degree which carry a possible prison term of two, three, four, five, six, seven, or eight years. R.C. 2903.11(D); 2929.14(A)(2). Defendant was also found guilty of the firearm specification, R.C. 2941.145, attached to each count of felonious assault. The trial court sentenced Defendant to eight years on each count of felonious assault, plus an additional and consecutive three years on each firearm specification, and ordered all of those sentences to be served consecutively.
 {¶ 65} Defendant was also found guilty of improperly discharging a firearm at or into a habitation, likewise a second degree felony, R.C. 2923.161(C), and having weapons while under a disability, a third degree felony carrying a possible prison term of one, two, three, four or five years. R.C. 2923.13(B); 2929.14(A)(3). The trial court sentenced Defendant to eight years for discharging a firearm at or into a habitation, and five years for having weapons under disability, and ordered those sentences to be served consecutively to each other and the felonious assault charges, for a total sentence of forty-six years.
 {¶ 66} Although the trial court's sentences were the *Page 22 
maximum allowable, they were nevertheless within the permissible range authorized by law. Where the trial court's sentence is within statutory limits, it is presumed that the court considered the relevant sentencing factors absent an affirmative showing to the contrary. State v.Crouse (1987), 39 Ohio App.3d 18.
 {¶ 67} Defendant argues that his sentence of forty-six years is unreasonable because, when the State offered a plea bargain providing for a twenty-year sentence, which when questioned by the court Defendant declined to accept, there was "no indication from the court that the offer of twenty years was unacceptable to the court [or] that the court would reject that offer from the state if Appellant was willing to accept it." (Brief, pp. 13-14). We cannot see how the court's silence on a matter that never came to fruition demonstrates that the court abused its discretion when, on the basis of the facts subsequently adduced at trial, the court imposed a harsher sentence.
 {¶ 68} Defendant's fifth assignment of error is overruled.
SIXTH ASSIGNMENT OF ERROR
 {¶ 69} "THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO MULTIPLE TERMS FOR MULTIPLE FIREARM SPECIFICATIONS, WHERE THE FELONIES UNDERLYING THE SPECIFICATIONS WERE PART OF THE *Page 23 
SAME ACT OR TRANSACTION."
 {¶ 70} Defendant argues that the firearm specification attached to each of three counts of felonious assault should have merged for sentencing purposes, and the trial court should have imposed only one additional and consecutive three year prison term for the firearm specifications, because the three felonious assault offenses were all committed as part of the same act or transaction. The court imposed three terms of three years each per R.C. 2929.14(D)(1)(a)(ii).
 {¶ 71} R.C. 2929.14 provides in relevant part:
 {¶ 72} "(D)(1)(a) Except as provided in division (D)(1)(e) of this section, if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.141, 2941.144, or 2941.145 of the Revised Code, the court shall impose on the offender one of the following prison terms:
 {¶ 73} . . . . .
 {¶ 74} "(ii) A prison term of three years if the specification is of the type described in section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense and displaying the firearm, brandishing the firearm, indicating that the *Page 24 
offender possessed the firearm, or using it to facilitate the offense
 {¶ 75} . . . . .
 {¶ 76} "(b) . . . A court shall not impose more than one prison term on an offender under division (D)(1)(a) of this section for felonies committed as part of the same act or transaction."
 {¶ 77} Pursuant to R.C. 2929.14(D)(1)(b), a court may not impose a prison term for more than one firearm specification for felonies committed as part of the "same act or transaction." State v. Walker
(June 30, 2000), Montgomery App. No. 17678. "Same act or transaction" means a series of continuous acts bound together by time, space and purpose, and directed toward a single objective. State v. Wills,69 Ohio St.3d 690, 1994-Ohio-417; Walker. The trial court refused to merge the firearm specifications attached to the three counts of felonious assault because each of those offenses constituted a separate shooting involving a different victim.
 {¶ 78} The felonious assault charges arise out of Defendant's conduct in shooting Keith Thomas, Willie Thomas and Starlina Gevedon. Just prior to the shooting, Defendant was involved in an argument with several people at 1011 Summer *Page 25 
Street, including Keith Thomas and Willie Thomas. Defendant forgot where he had placed his gun while visiting the Summer Street residence, and Defendant wrongly accused the people present, including the Thomas brothers, of stealing his gun.
 {¶ 79} Defendant left and returned ten to fifteen minutes later with another gun, and he once again argued with Keith Thomas outside the residence about his missing gun. Defendant then shot Keith Thomas twice. After shooting Keith Thomas, Defendant chased Willie Thomas, who had witnessed the shooting of his brother Keith, down the street, and shot him multiple times. After shooting Willie Thomas, Defendant then returned to his vehicle and reloaded his gun.
 {¶ 80} While reloading, Defendant observed Starlina Gevedon, who was on her front porch, calling the police. Gevedon ran inside her home at 1011 Summer Street, but Defendant fired multiple shots into that home, striking Gevedon in the back. According to Gevedon and Moniek Brown, Defendant's stated purpose in shooting Gevedon was to prevent her from calling the police.
 {¶ 81} We conclude, based upon these facts, that the shooting of Keith Thomas and Willie Thomas was part of a series of continuous acts bound together by time, space and purpose, and that these two shootings were directed toward a *Page 26 
single objective: retaliation by Defendant because he believed these two victims had stolen his gun. Accordingly, the shooting of Keith Thomas and Willie Thomas was part of the same act or transaction, and therefore per R.C. 2929.14(D)(1)(b) the court could not impose a prison term for more than one firearm specification with respect to these two felonious assault offenses.
 {¶ 82} Defendant's shooting of Starlina Gevedon, on the other hand, had a different purpose and objective than that behind the shootings of Keith and Willie Thomas. The evidence, including Defendant's statement at the time he shot Gevedon, reveals that Defendant shot Gevedon in order to prevent her from calling the police. Therefore, the shooting of Gevedon was not part of the same act or transaction as the shooting of Keith and Willie Thomas, and the trial court properly refused to merge the firearm specification attached to the felonious assault count involving the shooting of Gevedon.
 {¶ 83} Pursuant to the authority contained in Section 3(B)(2), Article IV, of the Ohio Constitution and R.C. 2953.08(G)(2)(b), we modify Defendant's sentence by merging the firearm specifications attached to the two felonious assault counts pertaining to the shooting of Keith Thomas and *Page 27 
Willie Thomas, and we impose one three year prison term on those merged firearm specifications, to be served consecutively to the other sentences, for a total aggregate sentence of forty-three years. This case will be remanded to the trial court for the sole purpose of notifying the Department of Rehabilitation and Correction of the modification in Defendant's sentence. Otherwise, Defendant's conviction and sentence will be affirmed.
 {¶ 84} Defendant's sixth assignment of error is sustained in part and overruled in part.
WOLFF, P.J. And WALTERS, J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1