[Cite as *State v. Kennedy*, 2018-Ohio-4997.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-100 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-0643C |
| | : | |
| DENNIS H. KENNEDY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of December, 2018.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

ALEX KOCHANOWSKI, Atty. Reg. No. 0090940, 6302 Kincaid Road, Cincinnati, Ohio 45213
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Dennis H. Kennedy, appeals from his conviction in the Clark County Court of Common Pleas after a jury found him guilty of one count of improperly handling a firearm in a motor vehicle and two counts of improperly discharging a firearm at or into a habitation, with two firearm specifications. In support of his appeal, Kennedy contends there was insufficient evidence to support his conviction and that his conviction was against the manifest weight of the evidence. Kennedy also contends that the trial court erred by failing to merge his offenses and firearm specifications at sentencing. Kennedy further contends the trial court erred by imposing consecutive sentences and by failing to impose minimum, concurrent sentences. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On December 8, 2015, the Clark County Grand Jury returned an indictment charging Kennedy with one count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree; one count of tampering with evidence in violation of R.C. 2921.121(A)(1), a felony of the third degree; and two counts of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), both felonies of the second degree. Each of the two counts charging Kennedy with improperly discharging a firearm at or into a habitation included a mandatory three-year firearm specification.

{¶ 3} The charges arose from allegations that on the night of September 22, 2015, Kennedy and Aaron Roberts fired several gunshots at two Springfield, Ohio, residences

located on Pine Street and on South Center Boulevard. Kennedy and Roberts were allegedly transported to the residences in a red SUV driven by Krista Jones. Following the shootings, the red SUV in question engaged in a high-speed chase with several Springfield police officers, which ended in the town of South Charleston. Roberts and Jones were apprehended from the red SUV in South Charleston after the chase came to an end, whereas Kennedy allegedly fled the scene on foot. After investigating the matter further, law enforcement apprehended Kennedy three months later and charged him with the aforementioned offenses.

{¶ 4} Kennedy pled not guilty to the charges and the matter proceeded to a jury trial. At trial, the State presented 24 witnesses and submitted over 100 exhibits in support of the charges against Kennedy. In his defense, Kennedy presented no witnesses, but offered five exhibits, two of which were admitted into evidence. After the State rested its case, Kennedy moved the trial court for a Crim.R. 29 dismissal of all the charges. The trial court denied Kennedy's motion. Following closing arguments and jury instructions, the jury deliberated and found Kennedy guilty of all the charges and specifications, excluding the charge for tampering with evidence.

{¶ 5} Prior to sentencing, Kennedy filed a motion requesting the trial court to merge all of his offenses and firearm specifications or, alternatively, to impose minimum, concurrent sentences. The trial court denied Kennedy's motion and thereafter sentenced Kennedy to eight years in prison for each count of improperly discharging a firearm at or into a habitation. The trial court also sentenced Kennedy to 18 months in prison for improperly handling a firearm in a motor vehicle, and it ordered Kennedy to serve a mandatory three-year prison term for each of the two firearm specifications. The

trial court ordered all of Kennedy's sentences to be served consecutively for a total term of 23.5 years in prison.

{¶ 6} Kennedy now appeals from his conviction, raising two assignments of error for review.

**First Assignment of Error**

{¶ 7} Under his First Assignment of Error, Kennedy contends there was insufficient evidence to support his conviction and that his conviction was against the manifest weight of the evidence.  We disagree.

{¶ 8} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."  *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt."  (Citations omitted.)  *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).  "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.)  *Id.*

{¶ 9} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive."  (Citation omitted.)  *Wilson* at ¶ 12.  When evaluating

whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61, 2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 10} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 11} As previously noted, Kennedy was convicted of one count of improperly handling a firearm in a motor vehicle in violation of 2923.16(B). Pursuant to that statute: "No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." R.C. 2923.16(B).

{¶ 12} Kennedy was also convicted of two counts of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1). Pursuant to that

statute: "No person, without privilege to do so, shall knowingly * * * [d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual[.]" R.C. 2923.161(A)(1). These charges included two three-year firearm specifications which alleged that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A).

{¶ 13} Kennedy contends the State's evidence was insufficient to support his conviction for the aforementioned offenses and specifications because the State failed to prove that he was involved in the shootings on Pine Street and South Center Boulevard or that he was present inside the get-away vehicle with a loaded firearm. We find no merit to Kennedy's claims.

{¶ 14} At trial, the State presented Aaron Roberts, who testified that he and Kennedy discharged firearms at the Pine Street and South Center Boulevard residences on the night in question. Roberts indicated that he and Kennedy engaged in such conduct because gunshots were fired at them earlier in the night while they were on Kenton Street. Roberts testified that he believed Gary Strodes and Michael Johnson were the individuals who fired shots at him and Kennedy.

{¶ 15} After the shooting on Kenton Street, Roberts testified that Krista Jones arrived in a red SUV and transported him and Kennedy to Kennedy's residence on Columbus Road, where they loaded two semi-automatic rifles. Once the rifles were loaded, Roberts testified that he and Kennedy returned to Jones's SUV to go "shoot up some houses." Trial Trans. Vol. II (Oct. 4, 2017), p. 264.

{¶ 16} Roberts testified that they first went to the residence of Gary Strodes's cousin, Jeff Strodes, located on Pine Street. Roberts testified that Jones drove him and Kennedy to Lafayette Avenue where they exited the SUV, walked through an alley, and discharged their firearms at Strodes's residence until their clips were empty. Roberts claimed he and Kennedy then ran back to the SUV and that Jones once again drove them to Kennedy's residence, where they reloaded their firearms.

{¶ 17} After reloading their firearms, Roberts testified that Jones drove him and Kennedy to Woodward Avenue where he and Kennedy exited the SUV and walked to Michael Johnson's residence on South Center Boulevard. Roberts testified that he and Kennedy fired several gunshots at Johnson's residence and then ran back to the SUV on Woodward. From there, Roberts testified that Jones drove him and Kennedy to York Street where Roberts noticed they were being followed. According to Roberts, a police chase ensued shortly thereafter.

{¶ 18} Roberts testified that the police chase led them out of Springfield and into the town of South Charleston. Upon reaching South Charleston, Roberts testified that their SUV hit stop sticks placed in the road by police. After hitting the stop sticks, Roberts testified that he threw his firearm out the SUV's window and that Kennedy did the same. According to Roberts, Kennedy then said "let me out, let me out, let me out." Trial Trans. Vol. II (Oct. 4, 2017), p. 270. In response, Roberts claimed that he leaned forward from where he was sitting in the front-passenger seat of the SUV and opened the front passenger door so that Kennedy could jump out of the two-door vehicle. After Kennedy fled the vehicle, Roberts testified that he and Jones stayed inside the SUV, where they were arrested.

{¶ 19} In addition to the foregoing testimony, Roberts identified the two firearms that he and Kennedy used during the shootings. The State thereafter called multiple investigating officers who testified that the firearms identified by Roberts were found in South Charleston near where Roberts and Jones were apprehended and where officers observed a third individual, later determined to be Kennedy, flee from the SUV on foot.

{¶ 20} A firearm examiner from the Ohio Bureau of Criminal Investigation ("BCI") testified that both firearms identified by Roberts were operable. A forensic ballistics expert from BCI also testified that all the shell casings collected near the Pine Street and South Center Boulevard residences were fired from the two firearms identified by Roberts. A DNA analyst from BCI further testified that a mixture of Roberts's and Kennedy's DNA was discovered on one of the firearms, and that Kennedy and Roberts were the major contributors of DNA on that firearm. Although the DNA testing on the second firearm was inconclusive, the DNA analyst testified that the inconclusive result simply meant that there was not enough data to include Roberts and Kennedy as DNA contributors. The analyst, however, testified that he could not rule out the possibility that Roberts's and Kennedy's DNA were present on the firearm.

{¶ 21} In addition to the testimony concerning the firearms, a criminal intelligence analyst from BCI testified regarding precision location data obtained from Kennedy's cell phone.[1] The analyst testified that the cell phone in question received service from

---

[1]Although the State presented no cell phone carrier records that officially linked Kennedy to the cell phone in question, the State presented other evidence linking Kennedy to the cell phone. The State presented Detective Beau Collins who testified that, through his occupation, he had dealt with Kennedy in the past and that he was aware of Kennedy's cell phone number, which was the same number associated with the cell phone for which the location data was obtained. The State also presented testimony from Detective Jerrold Mitchell, who extracted data from the cell phone pursuant to a search warrant.

cellular towers located in the area of the shootings at Kenton Street, Pine Street, and South Center Boulevard near the time that each of the shootings occurred. The cell phone data also indicated that Kennedy's cell phone received service from cellular towers that were located near South Charleston during the time the police were chasing the SUV into South Charleston.

{¶ 22} Kennedy claims the foregoing evidence was insufficient to support his conviction because the only direct evidence linking him to the offenses was the testimony of Roberts. Kennedy claims Roberts's testimony should have been discredited because it was biased. Kennedy claims Roberts's testimony was biased because Roberts entered a plea agreement with the State that reduced his charges. According to Kennedy, the only remaining evidence against him was circumstantial, which Kennedy claims was insufficient to convict him because it failed to exclude any reasonable theory of innocence.

{¶ 23} In crafting this argument, Kennedy relies on *State v. Kulig*, 37 Ohio St.2d 157, 309 N.E.2d 897 (1974), which was expressly overruled by *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). *Accord State v. Winton*, 2d Dist. Montgomery No. 27043, 2017-Ohio-6908, ¶ 43. Per *Jenks*, "[w]hen the state relies on circumstantial

---

Mitchell testified that after extracting data from the cell phone, he discovered that the e-mail address associated with the cell phone was "denniskennedy2112@gmail.com." Mitchell also testified that the cell phone was associated with a Snapchat user named "denniskennedy21." The State also presented Detective Ronald Jordan, who testified that the cell phone extraction provided several videos that were created by Kennedy. Jordan testified that the videos showed Kennedy turning the cell phone around to record himself with other people, and that Kennedy was on almost every video taken. Jordan also testified that he discovered the cell phone inside a vehicle that was parked outside a residence where Kennedy was staying. We find this was sufficient evidence linking Kennedy to the cell phone in question.

evidence to prove an essential element of the offense charged, *there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.*" (Emphasis added.) *Jenks* at paragraph one of the syllabus, overruling *Kulig.* Therefore, contrary to Kennedy's claim otherwise, "[c]ircumstantial evidence is as inherently probative as direct evidence." *Winton* at ¶ 23, citing *In re A.K.*, 2d Dist. Montgomery No. 21504, 2007-Ohio-2095, ¶ 21.

{¶ 24} That said, it was the province of the jury to determine whether Roberts's testimony was credible. The State presented the testimony of several law enforcement officers, expert witnesses, and other individuals who corroborated Roberts's testimony regarding his and Kennedy's conduct on the night in question. The DNA evidence discovered on one of the firearms and the cell phone location data also supported the finding that Kennedy was present during the offenses in question. Therefore, based on the facts and circumstances here, we find it was certainly reasonable for the jury to believe Roberts's testimony.

{¶ 25} At this juncture, we note that, as part of this assignment of error, Kennedy argues in his reply brief that the cell phone location data was inadmissible because it was obtained without a warrant in violation of his Fourth Amendment rights, pursuant to the United States Supreme Court's recent decision in *Carpenter v. United States*, __ U.S. __, 138 S.Ct. 2206, 201 L.Ed.2d 507 (2018). The court in *Carpenter* held that the government's acquisition of cell-site records constitutes a Fourth Amendment search. *Id.* at paragraph one of the syllabus. The court noted that, "even though the Government will generally need a warrant to access [cell-site location information], case-specific exceptions—e.g., exigent circumstances—may support a warrantless search."

*Id.* at paragraph two of the syllabus.

{¶ 26} The issue of whether the cell phone location data used at Kennedy's trial was obtained in violation of Kennedy's Fourth Amendment rights was never argued before the trial court, as Kennedy never moved to suppress the data. "It is settled law that issues raised for the first time on appeal and not having been raised in the trial court are not properly before this court and will not be addressed." *State v. Schneider*, 2d Dist. Greene No. 95-CA-18, 1995 WL 737910, * 1 (Dec. 13, 1995). While *Carpenter* was decided after Kennedy's conviction, there was nothing prohibiting Kennedy from moving the trial court to suppress the cell phone location data on Fourth Amendment grounds. Furthermore, "[a]n appellant may not use a reply brief to raise new issues or assignments of error." *State v. Murnahan*, 117 Ohio App.3d 71, 82, 689 N.E.2d 1021 (2d Dist.1996), citing App.R. 16(C). *Accord State v. McComb*, 2d Dist. Montgomery No. 26481, 2015-Ohio-2556, ¶ 14.

{¶ 27} Regardless, even if we were to review the issue and conclude that the cell phone location data was obtained without a warrant in violation of Kennedy's Fourth Amendment rights, such an error would be harmless beyond a reasonable doubt because, even without the cell phone location data, there was overwhelming evidence to convict Kennedy of the offenses in question. *See State v. Williams*, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983), quoting *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) ("evidence * * * improperly admitted in derogation of a criminal defendant's constitutional rights * * * is harmless 'beyond a reasonable doubt' if the remaining evidence alone comprises 'overwhelming' proof of defendant's guilt"). *Accord State v. Jenkins*, 2d Dist. Montgomery No. 27701, 2018-Ohio-3697, ¶ 16.

{¶ 28} When viewing all the other evidence in the light most favorable to the State, we find there was sufficient evidence indicating that Kennedy had a loaded firearm accessible to him while he was riding as a passenger in a motor vehicle, and that he was one of the individuals who discharged a firearm on Pine Street and on South Center Boulevard. Such evidence includes Roberts's testimony, the testimony of all the investigating officers, the expert witness testimony, and the DNA evidence. Therefore, we find that Kennedy's conviction for one count of improperly handling a firearm in a motor vehicle and two counts of improperly discharging a firearm at or into a habitation was supported by sufficient evidence. Because those offenses were supported by sufficient evidence, we also necessarily find there was sufficient evidence that Kennedy used a firearm while committing the two counts of improperly discharging a firearm at or into a habitation, thus supporting the two three-year firearm specifications.

{¶ 29} We further find that Kennedy's conviction was not against the manifest weight of the evidence. At trial, the State presented testimony from 24 witnesses and introduced over 100 exhibits, all of which the jury could have reasonably credited to conclude that Kennedy was guilty of the offenses and specifications at issue. Therefore, due to the abundance of evidence implicating Kennedy in the alleged offenses, the jury did not clearly lose its way or create a manifest miscarriage of justice in finding him guilty.

{¶ 30} Kennedy's First Assignment of Error is overruled.

**Second Assignment of Error**

{¶ 31} Under his Second Assignment of Error, Kennedy contends the trial court erred by failing to merge his offenses and firearm specifications at sentencing. Kennedy

also contends the trial court erred by imposing consecutive sentences and by failing to impose minimum, concurrent sentences.   We disagree with Kennedy's claims.

*Merger*

{¶ 32} As previously noted, Kennedy contends the trial court should have merged his offenses and firearm specifications at sentencing.   With regard to Kennedy's offenses, Ohio's allied offense statute, R.C. 2941.25, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 33} " '[W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?   An affirmative answer to any of the above will permit separate convictions.   The conduct, the animus, and the import must all be considered.' " *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State*

*v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

{¶ 34} As to the question of import and significance, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23. In regard to the animus, " '[w]here an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, [a] priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime.' " *State v. Ramey*, 2015-Ohio-5389, 55 N.E.3d 542, ¶ 70 (2d Dist.), quoting *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979).

{¶ 35} We review allied-offense determinations de novo. *State v. Harmon*, 2017-Ohio-8106, 98 N.E.3d 1238, ¶ 59 (2d Dist.), citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. De novo appellate review means that this court independently reviews the record and affords no deference to a trial court's decision. *State v. Walker*, 10th Dist. Franklin No. 06AP-810, 2007-Ohio-4666, ¶ 10.

{¶ 36} As previously discussed, Kennedy was convicted of two separate counts of improperly discharging a firearm at or into a habitation with a firearm specification attached to each count. One of the counts was for gunshots fired at a residence on Pine Street and the other count was for gunshots fired at a residence on South Center Boulevard. The offenses were dissimilar in import and significance because each shooting produced separate victims that suffered separate, identifiable damage to their respective homes. The record also indicates that the shootings occurred separately in time and distance. The record further indicates that the motivation behind the shootings

was to exact revenge on two separate individuals, meaning the shootings did not arise from a single animus. Therefore, the two counts for improperly discharging a firearm at or into a habitation were not allied offenses subject to merger.

{¶ 37} The improper discharge counts and the count for improperly handling a firearm in a motor vehicle were also not allied offenses subject to merger. This is because the harm or danger that arose from carrying a loaded firearm in a motor vehicle was separate and distinct from the harm or danger that arose from discharging a firearm at or into a habitation. *See State v. Pope*, 2017-Ohio-1308, 88 N.E.3d 584, ¶ 34-35 (2d Dist.) (holding that OVI and improper handling offenses were not allied offenses subject to merger because the offenses involved separate harm).

{¶ 38} In *State v. Johnson*, 10th Dist. Franklin Nos. 16AP-860, 16AP-868, and 16AP-869, 2017-Ohio-9286, the trial court declined to merge certain offenses at sentencing, including two counts of improperly discharging a firearm at or into a habitation and one count of improperly handling a firearm in a motor vehicle. *Id.* at ¶ 15-16. The offenses stemmed from the defendant's driving to an individual's house, getting out of his vehicle, firing shots into the house, and then driving to another individual's house, where the defendant once again got out of his vehicle and fired shots into that house. *Id.* at ¶ 2. The Tenth District held that, because the defendant's improper handling offense occurred both before and after the defendant discharged his firearm at the residences, the improper handling offense and improper discharge offenses were " 'not alike in their significance and their resulting harm.' " *Id.* at ¶ 21, quoting *Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 21. We agree.

{¶ 39} With regard to Kennedy's two firearm specifications, the Supreme Court of

Ohio has made clear that "[t]he criminal offense of discharging a firearm at or into a habitation as defined in R.C. 2923.161 and a firearm specification as defined in R.C. 2941.145 are not allied offenses of similar import as defined in R.C. 2941.25, because a firearm specification is a penalty enhancement, not a criminal offense." *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, paragraph one of the syllabus.

**{¶ 40}** As to the question of whether Kennedy's two firearm specifications should have merged with each other, we look to R.C. 2929.14(B)(1)(b), not R.C. 2941.25. R.C. 2929.14(B)(1)(b) provides that: "Except as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." The exception under division (B)(1)(g) of the statute does not apply to this case; therefore, whether Kennedy's firearm specifications should have merged depends on whether the improper discharge offenses were committed as part of the "same act or transaction."

**{¶ 41}** " 'Same act or transaction' means a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." *State v. Nowden,* 2d Dist. Clark No. 07CA0120, 2008-Ohio-5383, ¶ 77, citing *State v. Wills*, 69 Ohio St.3d 690, 635 N.E.2d 370 (1994). In determining whether felonies are committed as part of the same act or transaction, "[t]he test is not whether there was a separate animus for each offense; the appropriate consideration is whether the defendant 'had a common purpose in committing multiple crimes' and engaged in a 'single criminal adventure.' " *State v. Like*, 2d Dist. Montgomery No. 21991, 2008-Ohio-1873, ¶ 40, quoting *State v. Adams*, 7th Dist. Mahoning No. 00 CA 211, 2006-Ohio-1761, ¶ 54, 57. (Other citation omitted.)

{¶ 42} In this case, the improper discharge offenses to which the firearm specifications applied were not committed as part of the same act or transaction. As previously noted, the shootings occurred at different times and at separate locations. After Kennedy finished discharging his firearm at the residence on Pine Street, he left the scene and went back to his house to reload his firearm. Once his firearm was reloaded, Kennedy then went on to discharge his firearm at the residence on South Center Boulevard. These are two separate "criminal adventures" which Kennedy committed for purposes of exacting revenge on two separate individuals. The trial court therefore properly declined to merge Kennedy's two firearm specifications.

{¶ 43} For the foregoing reasons, Kennedy's merger argument lacks merit.

*Consecutive and Minimum Sentences*

{¶ 44} Kennedy also contends that the trial court erred by imposing consecutive sentences and by failing to impose minimum, concurrent sentences. We review felony sentences in accordance with the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 10, 16. *Accord State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069 (2d Dist.).

{¶ 45} R.C. 2953.08(G)(2) provides that:

The appellate court may increase, reduce, or otherwise modify a sentence

that is appealed under this section or may vacate the sentence and remand

the matter to the sentencing court for resentencing. The appellate court's

standard for review is not whether the sentencing court abused its

discretion. The appellate court may take any action authorized by this

division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 46} Pursuant to the plain language of R.C. 2953.08(G)(2), this court may vacate or modify Kennedy's sentence only if it "determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Marcum* at ¶ 1. This is a very deferential standard of review, as the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record fails to support the trial court's findings. *Rodeffer* at ¶ 31, citing *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 21 (8th Dist.).

{¶ 47} In this case, the trial court made findings under one of the relevant statutes referred to in R.C. 2953.08(G)(2), namely, R.C. 2929.14(C)(4). Pursuant to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it determines that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied.

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed

pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

**{¶ 48}** " '[A] trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings.' " *State v. Bittner*, 2d Dist. Clark No. 2013-CA-116, 2014-Ohio-3433, ¶ 11, quoting *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38 (2d Dist.). Again, "the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record fails to support the trial court's findings." *Id.* In applying that standard of review, "the consecutive nature of the trial court's sentencing

should stand unless the record overwhelmingly supports a contrary result." (Citation omitted.) *Id.* at ¶ 39.

**{¶ 49}** The record in this case establishes that the trial court made all the required consecutive-sentence findings at the sentencing hearing and in the sentencing entry. *See* Sentencing Trans. (Oct. 31, 2017), p. 18; Judgment Entry of Conviction (Nov. 27, 2017), Docket No. 57, p. 3. Specifically, the trial court stated the following at the sentencing hearing:

The Court finds that consecutive sentences [are] necessary to protect the public from future crime and to punish the Defendant and that the consecutive sentences are not disproportionate to the seriousness [of] his conduct and to the danger he poses to the public. The Court also finds that the Defendant committed one or more multiple acts while he was awaiting trial or sentencing. As indicated, he was under bond for two cases at the time.

The Court further finds that at least two of the multiple offenses were committed as part of the normal courses of conduct and the harm caused by the two or more multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of the course of conduct or courses of conduct adequately reflects the seriousness of the Defendant's conduct. And the Defendant's history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime by the defendant.

Sentencing Trans., p. 18.

{¶ 50} As previously noted, when a trial court makes the required consecutive-sentence findings under R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings. *Withrow* at ¶ 38. After a thorough review of the record, we do not clearly and convincingly find that the record does not support the trial court's consecutive-sentence findings. The record indicates that Kennedy's shooting spree placed several people in severe danger and caused property damage to multiple homes. The record also indicates that Kennedy committed the offenses while he was out on bond for two separate cases, one of which involved another charge of improperly handling a firearm in a motor vehicle. The record further indicates that Kennedy had a history of criminal convictions for aggravated menacing, obstruction of official business, fleeing and eluding, improper handling of a firearm in a motor vehicle, possession of heroin, driving under suspension, failure to appear, and a juvenile adjudication for receiving stolen property. Because we do not clearly and convincingly find that the record does not support the trial court's consecutive-sentence findings, we must conclude that the trial court did not err in imposing consecutive sentences.

{¶ 51} We also do not find that the trial court erred in failing to impose minimum, concurrent sentences. "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give reasons for imposing maximum or more than minimum sentences." (Citation omitted.) *State v. Nelson*, 2d Dist. Montgomery No. 25026, 2012-Ohio-5797, ¶ 62. *Accord State v. Terrel*, 2d Dist. Miami No. 2014-CA-24, 2015-Ohio-4201, ¶ 14. A sentence "is not contrary to law [if it falls] within the statutory range [and the trial court] expressly state[s]

that it * * * considered the purposes and principles of sentencing [under] R.C. 2929.11 [and] 2929.12." *Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, at ¶ 32.

{¶ 52} Here, the trial court expressly stated at the sentencing hearing and in its sentencing entry that it considered the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. Additionally, the 8-year prison sentences imposed for each of the two charges for improperly discharging a firearm at or into a habitation and the 18-month prison term imposed for the charge of improperly handling a firearm in a motor vehicle were within the authorized statutory range. *See* R.C. 2929.14(A)(2),(A)(4). Kennedy's sentence was therefore not contrary to law.

{¶ 53} An appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence. *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23. We find no such evidence here. As previously noted, the record indicates that Kennedy's conduct placed several people in severe danger and caused extensive property damage. Kennedy also committed the offenses in question while he was out on bond for a charge that involved the same type of conduct, i.e., improperly handling a firearm in a motor vehicle. The record also indicates that Kennedy had a fairly extensive criminal record and that he had not responded favorably to prior sanctions. Because we do not find by clear and convincing evidence that the record does not support Kennedy's sentence, his sentence will not be disturbed by this court on appeal.

{¶ 54} For the foregoing reasons, Kennedy's arguments concerning his sentences

lack merit.

{¶ 55} Kennedy's Second Assignment of Error is overruled.

## Conclusion

{¶ 56} Having overruled both of Kennedy's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Andrew P. Pickering
Alex Kochanowski
Hon. Richard J. O'Neill