DECISION. *Page 2 
{¶ 1} Defendant-appellant, Bruce Woods, appeals convictions for one count of aggravated burglary under former R.C. 2911.11(A)(1), two counts of aggravated robbery under former R.C. 2911.01(A)(1), two counts of robbery under former R.C. 2911.02(A), and two counts of kidnapping under f0rmer 2905.01(A)(2). All of the convictions, except the robbery convictions, had accompanying firearm specifications. We affirm the guilty findings, but because we hold that the trial court erred in sentencing Woods, we vacate his sentences and remand the matter for resentencing.
 {¶ 2} Before we begin our analysis, we note that the judgment entry incorrectly states that Woods was convicted of aggravated burglary under former R.C. 2911.1(A)(1) in counts one, two, and four of the indictment. But only count one of the indictment charged aggravated burglary. Counts two and four charged aggravated robbery under former R.C. 2911.01(A)(1). The record shows that Woods was tried for and found guilty of aggravated robbery in counts two and four. Thus, the misstatement is obviously a clerical error. Courts may correct clerical errors in judgments at any time.[1] Since we are remanding the matter for resentencing, we direct the trial court to correct the judgment entry.
 {¶ 3} The record shows that on January 8, 1996, Deborah Allen called her aunt, Linda Allen, and asked for money to feed her children. Linda refused to give Deborah money, but agreed to go to the store with her to buy groceries. That afternoon, Woods drove Deborah to her aunt's house and then drove them both to *Page 3 
the store. During the ride back to Linda's house, Woods asked Deborah if Linda was the aunt who had recently received a large settlement. Linda told Woods that the settlement was none of his business, and the matter was dropped.
 {¶ 4} That night, Linda answered a knock at her door. A man, whom Linda later identified as Woods, told her that he had hit a car and wanted to know if it was hers, so she opened her door to look at the car. She saw that her car was fine, but Woods pointed to a different car, so she opened the door farther to see if her neighbor's car had been hit.
 {¶ 5} Suddenly, Woods pulled a ski mask down over his head, shoved a gun into her stomach, and forced her back into her house. Once inside, he hit Linda repeatedly with the gun. Two masked accomplices followed Woods into the house.
 {¶ 6} Woods forced Linda into the living room where her grandchildren, who lived with her, were sitting. The children began screaming, which woke Linda's daughter, Cynthia Allen, who also lived with her. Cynthia came out of her room to see what was happening and ran into one of the robbers. She shoved him out of the way and ran into the living room. Woods then pointed the gun at her head and told her to "shut the fuck up and sit down."
 {¶ 7} Woods sent one of his accomplices to search the house and had the other stand guard by the door. Woods told Linda, "You're going to give me the money[,] * * * I know you've got it, [or I will] blow your face off." Woods then pointed the gun at the middle of Linda's face. Rachone Riggins, one of Woods's accomplices, yelled, "Don't kill her, Bruce!" Woods pulled the trigger, but nothing happened. Cynthia began to argue with Woods, which caused Woods to point the gun at her and say that he would "blow her away," too. *Page 4 
 {¶ 8} Woods told Riggins to quit using his name. Riggins told Woods that they should just leave, but Woods replied, "We ain't leaving until we get what we came for." Riggins then went through the house looking for anything that he thought would appease Woods. He eventually learned that Cynthia had some money in her purse, and he forced Cynthia to get it for him.
 {¶ 9} While Riggins was talking to Cynthia, Woods ordered the other accomplice to tie up the hostages and take them to the basement. Linda told them that she could not walk down the steps with her feet bound. Woods said, "I don't care. Throw the bitch down the steps." The accomplice untied Linda's feet so she could walk to the basement.
 {¶ 10} Riggins accompanied them to the basement, where the hostages were bound with duct tape. A short time later, he was summoned upstairs. After he left, Linda and Cynthia waited about ten minutes. Then, Linda went upstairs and found that the robbers were gone. Cynthia went to a neighbor's house and called the police.
 {¶ 11} The court entered a judgment of conviction on June 14, 1996. Woods did not file a timely notice of appeal. In August 1998, he moved for leave to file a delayed appeal, which this court denied.[2] The Ohio Supreme Court denied leaved to appeal and dismissed the appeal as not involving any substantial constitutional question.[3]
 {¶ 12} Subsequently, Woods filed a petition for a writ of habeas corpus in United States District Court. That court granted Woods the writ and ordered that *Page 5 
Woods be released from prison unless Ohio courts granted him a delayed appeal.[4] Consistent with the court's order, we granted him leave to file this appeal.
 {¶ 13} Woods presents five assignments of error for review. In determining these assignments of error, we refer to the statutes in effect at the time of the offense.
 {¶ 14} In his first assignment of error, Woods contends that the evidence was insufficient to convict him of all four firearm specifications. He argues that the state failed to prove that the gun was operable. This assignment of error is not well taken.
 {¶ 15} Former R.C. 2929.71, which allowed for additional incarceration for offenses involving a firearm, stated that "firearm" had the same meaning as in former R.C. section 2923.11. Former R.C. 2923.11(B)(1) defined a "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." It further stated that the term "firearm" included "an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable."
 {¶ 16} The trier of fact may rely on circumstantial evidence to determine whether a firearm can expel or propel projectiles. That evidence can consist of the defendant brandishing the firearm and the implicit threat to shoot it.[5] This court has also said that a victim's belief that a weapon is a gun, together with the intent on the part of the accused to create and use that belief for his own criminal purposes, is sufficient to prove a firearm specification.[6]
 {¶ 17} In this case, the state presented evidence that Woods had pointed the gun at Linda and had threatened to "blow [her] face off." He also pointed it at *Page 6 
Cynthia Allen and threatened to "blow her away." Certainly the victims believed that Woods had a gun, and he and his accomplices created and used that belief for their own criminal purposes.
 {¶ 18} Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state had proved beyond a reasonable doubt that the gun was capable of expelling or propelling projectiles. Therefore, the evidence was sufficient to convict Woods of the firearm specifications.[7] We overrule Woods's first assignment of error.
 {¶ 19} In his second assignment of error, Woods contends that his convictions for the four firearm specifications were against the manifest weight of the evidence. After reviewing the record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Woods's convictions on the firearm specifications and order a new trial. Therefore, his convictions were not against the manifest weight of the evidence.[8] We overrule Woods's second assignment of error.
 {¶ 20} In his third assignment of error, Woods contends that the trial court erred in imposing multiple, consecutive prison terms for each of the four firearm specifications. He argues that they were all part of the same act or transaction. We find some merit in this assignment of error.
 {¶ 21} Former R.C. 2929.71(B) provided that if the felonies to which firearm specifications were attached "were committed as part of the same act or transaction, only one three-year term of actual incarceration shall be imposed for those *Page 7 
offenses[.]" The phrase "same act or transaction" means "a series of continuous acts bound together by time, space and purpose, and directed toward a single criminal objective."[9]
 {¶ 22} In assessing whether multiple firearm specifications are proper, a court should focus on an individual's overall criminal objectives, not on the specific animus for each crime. Whether a defendant had a common purpose in committing multiple crimes is a broader concept than animus.[10] Multiple victims do not necessarily preclude a finding that only a single act or transaction had occurred.[11]
 {¶ 23} We hold that the trial court erred in sentencing Woods for more than one firearm specification for the aggravated burglary and aggravated robbery convictions. All three of these offenses were part of a single criminal adventure. They involved one continuous sequence of events that were connected in time and space. They also involved a single criminal objective: the robbery of Linda Allen. Consequently, all three offenses arose from the same act or transaction, and the trial court should only have sentenced Woods for one firearm specification related to those offenses.[12]
 {¶ 24} The trial court also sentenced Woods to a period of actual incarceration for the firearm specification on one of the kidnapping convictions. We reach a different result as to that offense. When Woods ordered Linda and Cynthia bound and taken to the basement, the restraint went beyond that necessary to complete the robbery. At *Page 8 
that point, the criminal objective changed from robbery to kidnapping.[13] Thus, the kidnapping was not part of the same act or transaction as the aggravated burglary and the aggravated robberies. The trial court did not err in imposing a term of actual incarceration on the firearm specification accompanying the kidnapping conviction.
 {¶ 25} In sum, we hold that the trial court erred in ordering that the terms of actual incarceration imposed on all four firearm specifications he served consecutively. It should have ordered that the sentences for the aggravated-burglary and aggravated-robbery specifications be served concurrently with each other, but consecutively to the sentence for the kidnapping specification. Consequently, we sustain his third assignment of error, vacate the sentences and remand the matter for resentencing.
 {¶ 26} In his fourth assignment of error, Woods states that the trial court erred in ordering that his sentence for one of the kidnappings be served consecutively to the sentences for aggravated burglary and the aggravated robberies. We note that Woods was only sentenced on count six, the kidnapping of Linda. The court merged count five, the kidnapping of Cynthia, with count six. Woods argues that in this case, the kidnapping was an allied offense of similar import to the aggravated burglary and aggravated robberies and that it was not committed with a separate animus. This assignment of error is not well taken.
 {¶ 27} In applying R.C. 2941.25, the allied-offenses statute, courts use a two-step analysis. The first step requires a determination that the offenses are allied offenses of similar import through a comparison of their elements. If the court finds that they are allied offenses, it must proceed to the second step, which involves a review *Page 9 
of the defendant's conduct to determine whether the offenses were committed separately or with a separate animus as to each.[14]
 {¶ 28} As often happens in these cases, the state argues thatState v. Rance,[15] which requires a strict comparison of the elements test in determining whether offenses are allied offenses of similar import, applies. Woods relies on State v. Adams,[16] in which the Ohio Supreme Court seemingly retreated from its holding in Rance in cases involving kidnapping.[17]
 {¶ 29} We need not reach the issue of whether Adams effectively overruled Rance because we hold that, even if kidnapping is an allied offense to aggravated burglary or aggravated robbery, the offenses were committed separately. In this case, the restraint and movement of Linda and Cynthia were not merely incidental to the other offenses. The restraint was prolonged, the confinement in the basement was secretive, and the movement was substantial enough to have significance independent of the other offenses. The kidnapping involved a risk of harm separate from the burglary and the robberies. Consequently, the kidnapping was committed with a separate animus, and Woods could properly have been sentenced on the kidnapping conviction.[18] We overrule Woods's fourth assignment of error.
 {¶ 30} In his fifth assignment of error, Woods contends that the trial court erred in imposing enhanced sentences based on specifications that he had previously been convicted of a second-degree felony. He argues that the trial court failed to make *Page 10 
the required finding that he had been convicted of the previous offense. This assignment of error is well taken.
 {¶ 31} Former R.C. 2941.142 allowed for a term of actual incarceration for an offender who had previously been convicted of a felony of the first, second, or third degree, if the indictment included the appropriate specification. The statute went on to state that, "[i]f an indictment, count in an indictment, or information that charges a defendant with an aggravated felony contains such a specification, the defendant may request that the trial judge, in a case tried by a jury, determine the existence of the specification at the sentencing hearing."
 {¶ 32} Before the start of trial, Woods's counsel informed the trial court that Woods would stipulate that he had previously been convicted of robbery, as the indictment had specified. Consequently, the state agreed not to discuss the prior conviction at trial. Before the announcement of the jury's verdict, the court stated, "I want to put on the record the fact that the specifications that were not before the jury-I believe, sir, you had the ones dealing with prior convictions * * *. It's not necessary for me to make a finding on it since it was in the specification." At the sentencing hearing, the court did not mention the prior-conviction specifications, although it imposed enhanced sentences of 15 to 25 years on each of the principal offenses. Under former R.C.2929.11(B)(1)(a), only convictions on the specifications would have allowed those sentences.
 {¶ 33} Woods contends that because the court never made a determination about the specifications at the sentencing hearing, as the statute required, he could not receive the enhanced sentences. The court should have made specific findings about the specifications at the sentencing hearing. But we find a bigger problem. The *Page 11 
judgment of conviction makes no mention at all of the prior-conviction specifications. It refers only to "gun specifications" and specifications specifically relating to the kidnapping charges. There are simply no findings of guilt on the prior-conviction specifications, which is more than a clerical error.
 {¶ 34} Because there were no findings of guilt on those specifications, the court had no authority to impose the enhanced sentences.[19] It should have sentenced Woods under former R.C.2929.11(B)(1)(a), which was the section applicable in the absence of a finding of guilt on a prior-conviction specification. Consequently, we sustain Woods's fifth assignment of error.
 {¶ 35} We vacate the sentences imposed and remand the case for resentencing. We affirm the trial court's judgment in all other respects.
Judgment affirmed in part and reversed in part, and cause remanded. PAINTER, P.J. and HILDEBRANDT, J., concur.
[1] State ex rel. Cruzado v. Zaleski, 111 Ohio St.3d 353,2006-Ohio-5795, 856 N.E.2d 263, ¶ 19.
[2] State v. Woods (Nov. 1, 1998), 1st Dist. No. C-980716.
[3] State v. Woods (1999), 84 Ohio St.3d 1483, 705 N.E.2d 364.
[4] Woods v. Jackson (Mar. 22, 2006), S.D.Oh. No. 1:00-CV-00803.
[5] State v. Thompkins, 78 Ohio St.3d 380, 384-385, 1997-Ohio-52,678 N.E.2d 541.
[6] State v. Jeffers (2001), 143 Ohio App.3d 91, 95,757 N.E.2d 417.
[7] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; State v. Russ, 1st Dist. No. C-050797,2006-Ohio-6824, at ¶ 13.
[8] See Thompkins, supra, at 387; State v. Allen (1990),69 Ohio App.3d 366, 374, 590 N.E.2d 1272.
[9] State v. Wills, 69 Ohio St.3d 690, 691, 1994-Ohio-417,635 N.E.2d 370; State v. Hill, 1st Dist. No. C-020137, 2002-Ohio-7079, at ¶ 6.
[10] Russ, supra, at ¶ 26; State v. Moore, 161 Ohio App.3d 778,2005-Ohio-3311, 832 N.E.2d 85, at ¶ 42-45.
[11] See Russ, supra, at ¶ 27-30; Hill, supra, at ¶ 2 and 6-7.
[12] See State v. Harris, 7th Dist. No. 04 JE 44, 2006-Ohio-3520, at ¶ 126-133; Hill, supra, at ¶ 6-7.
[13] See State v. Bunch, 7th Dist. 02 CA 196, 2005-Ohio-3309, at ¶ 228-231, reversed on other grounds, In re Ohio Crim. SentencingStatutes Cases, 109 Ohio St.3d 313, 2006-Ohio-2109,847 N.E.2d 1174.
[14] State v. Mitchell (1983), 6 Ohio St.3d 416, 418, 453 N.E.2d 593;State v. Murray, 156 Ohio App.3d 219, 2004-Ohio-654, 805 N.E.2d 156, at ¶ 17-18.
[15] 85 Ohio St.3d 632, 636-639, 1999-Ohio-291, 710 N.E.2d 699.
[16] 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, at ¶ 89-95.
[17] See State v. Sheppard, 1st Dist. Nos. C-060042 and C-060066,2007-Ohio-24, at ¶ 4-7; State v. Reid, 1st Dist. No. C-050465,2006-Ohio-6450, at ¶ 21; State v. Willis, 1st Dist. No. C-040588,2005-Ohio-5001, at ¶ 1-6.
[18] See State v. Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404,858 N.E.2d 1144, at ¶ 44-47.
[19] State v. Mills (Aug. 2, 1989), 1st Dist. No. C-880500. *Page 1