[Cite as *State v. Williams*, 2020-Ohio-1368.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180588 |
| | | TRIAL NO. B-1705744 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| ANQUAN WILLIAMS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  April 8, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Rubenstein & Thurman, L.P.A.,* and *Scott A. Rubenstein,* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} A kidnapping at gunpoint, followed by a high-speed chase, led to the criminal charges in this case. The defendant, while admitting that he drove the car, disputed his involvement in this affair, professing ignorance of his accomplices' plans to perpetrate the kidnapping. But the key victim identified him as the individual who seized her child, and the jury was certainly entitled to credit her account. And it did just that—convicting him on several counts. In light of the evidence presented at trial, on a weight and sufficiency review (in addition to a merger issue and ineffective assistance), we affirm the trial court's judgment.

I.

{¶2} On a fall evening in September 2017, Jonae Tye returned home from the grocery store with her two daughters and 16-year-old niece in tow. As she unbuckled her one-year-old daughter from the car seat, out of the corner of her eye, she spied a white SUV inching down the street with no headlights on. Scrutinizing the vehicle as it drew nearer, Ms. Tye observed individuals inside with bandanas covering their faces. Alarmed, Ms. Tye instructed her eight-year-old daughter and niece to dash inside and hide, while she desperately grabbed her one-year-old. But her efforts proved too late, as three men leapt out of the vehicle, brandishing guns at Ms. Tye, while one man remained in the SUV. Ms. Tye and defendant-appellant Anquan Williams recount fundamentally different stories about what transpired this evening.

{¶3} According to Ms. Tye, Mr. Williams was in fact one of the men who exited from the vehicle. After approaching her, Mr. Williams dragged Ms. Tye by the hair into the

house, with all three men demanding money.  In response, Ms. Tye set her one-year-old child down and forked over all the money in her purse.  But the men insisted on more, and one of the men pistol-whipped her out of frustration.  With blood trickling down her face, Mr. Williams led Ms. Tye at gunpoint upstairs and ordered her to search for more money. She obliged, foraging in her bedroom until she discovered some cash—a few singles with some Mexican currency mixed in.  Insisting that she had no more money, Mr. Williams led her back downstairs where the other two men remained.  This time, the three men demanded that she call her boyfriend, but he did not answer his phone.  In the wake of the unanswered call, Mr. Williams seized Ms. Tye's phone, grabbed her one-year-old child, and warned her that if she wanted her child back, she needed to instruct her boyfriend to call her (now stolen) phone.  The three men then ran out of the house and drove off in the white SUV.

{¶4}    Ms. Tye urgently grabbed another phone and ran out after them, calling the police.  Arriving within minutes, Ms. Tye recounted the events and provided a description of the vehicle to the officers, who in turn informed other police units.  Upon learning that the men took Ms. Tye's phone, one of the officers, Joe Haugh, using the iPhone app "Find My iPhone," tracked her phone and, in turn, discerned the suspects' location.  Meanwhile, another police officer, Jerome Barnell, spotted the suspects' white SUV and gave pursuit.  A high-speed chase ensued, with the suspects' vehicle reaching up to 100 m.p.h. on the highway and between 60 and 75 m.p.h. in the residential areas, before ultimately crashing into a wooded area.  But the chase did not end there, with the suspects leaping from the crashed vehicle and darting away from the scene.  Officer Barnell apprehended one of the suspects, later identified as Mr. Williams, about a hundred yards from the vehicle,

3

handcuffing and taking him into custody. Another officer, Corporal Anthony Leidenbor, approached the abandoned vehicle, finding the one-year-old crying hysterically but otherwise unharmed. A subsequent police search of the wooded area where the vehicle crashed uncovered myriad items, including three firearms, a Mexican peso, and a cell phone.

{¶5} Mr. Williams, however, tells quite a different story. According to him, he merely arrived at Ms. Tye's residence to purchase marijuana. He maintains that he drove on the night in question, and, upon arrival, dropped off the three men at the residence in order to allow them to consummate the drug purchase. He parked the SUV and waited for five to ten minutes, until suddenly his cohorts burst onto the scene, throwing open the doors and screaming at him to drive away. Believing someone was chasing his friends (perhaps the drug deal went awry), he followed their instructions, zipping down various streets to reach the highway. It was then, Mr. Williams recalls, that he realized for the first time the one-year-old child's presence, as a baby's scream emerged from the backseat. As he continued to drive south on I-75, the police eventually pulled up behind the vehicle and signaled for him to stop. Unsure what to do, and with his friends imploring him to drive on, Mr. Williams disregarded the officer's instruction, leading the police on a high-speed chase until the vehicle crashed.

{¶6} In the wake of this incident, Mr. Williams was indicted on ten counts, including two counts of aggravated burglary, one count of robbery, one count of felonious assault, one count of abduction, two counts of kidnapping, two counts of failure to comply, and one count of having weapons while under a disability. Counts one through seven each included two specifications that Mr. Williams had a firearm while committing the offenses

4

and that he used that firearm during the crime. Similarly, counts eight and nine also encompassed a specification that he had a firearm while committing the offenses. Mr. Williams would later proceed to a jury trial on counts one through nine (waiving his right to a jury trial on count ten), with the jury ultimately finding him guilty of the two kidnapping and two failure to comply offenses, but unable to reach verdicts on the remaining charges. The trial court found him guilty of having weapons while under a disability. As to the specifications, the jury found Mr. Williams possessed a firearm while committing the kidnapping and failure to comply offenses. At sentencing, the court merged the two kidnapping offenses and the two failure to comply offenses, ultimately sentencing him to seven years for kidnapping and 24 months for failure to comply, both carrying an additional mandatory one-year term for the accompanying firearm specifications, and one year for the weapons-under-disability offense. The court ordered his sentences to be served consecutively for a total of 12 years.

{¶7} Mr. Williams now appeals, raising four assignments of error. His first two assignments of error challenge the weight and sufficiency of his kidnapping offenses and firearm specifications. As to his other two assignments of error, he asserts that the court erred when it failed to merge his firearm specifications and challenges the effectiveness of his counsel.

II.

{¶8} In two interrelated assignments of error, Mr. Williams challenges the weight and sufficiency of the evidence underlying his kidnapping convictions and firearm specifications. When reviewing the weight of the evidence, we must scrutinize the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the

witnesses, and conclude whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). By contrast, when evaluating the sufficiency of the evidence, we must question, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found all the necessary elements of the crime beyond a reasonable doubt. *See State v. Morris*, 1st Dist. Hamilton No. C-150421, 2016-Ohio-5490, ¶ 14, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶9} Turning first to his sufficiency challenge, Mr. Williams maintains that the state failed to establish that he possessed the necessary mens rea for the kidnapping offenses and accompanying firearm specifications. As a preliminary matter, we need not consider his sufficiency challenge as to his mens rea regarding the R.C. 2905.01(A)(1) kidnapping offense since the court merged it with the R.C. 2905.01(B)(1) kidnapping charge. *See State v. Hendrix,* 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, ¶ 42 ("[Defendant] was never sentenced on the felonious-assault charges, because they were merged with the attempted-murder charges, so [defendant] cannot appeal the jury's findings with respect to the felonious-assault charges."); *State v. Johnson*, 8th Dist. Cuyahoga No. 106141, 2018-Ohio-4023, ¶ 16, fn. 1 ("When a court merges one offense into another, an appellate court has no obligation to consider whether the merged count is supported by the sufficiency of the evidence."). Accordingly, limiting our focus to R.C. 2905.01(B)(1), a violation of this statute occurs when a person knowingly removes, by any means, a minor child from the place where he or she is found under circumstances that either create a substantial risk of serious physical harm or cause physical harm to the minor

victim. *See* R.C. 2905.01(B)(1). A person acts with the requisite mens rea of "knowingly," when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶10} Mr. Williams maintains that he did not knowingly remove the one-year-old child. He contends that, as merely the driver of the vehicle, he believed the mission was simply to purchase marijuana, not to rob Ms. Tye and take her child, and thus, he did not become mindful of the child's presence until after he drove onto the highway. But the state provided evidence to establish otherwise. At trial, Ms. Tye identified Mr. Williams as the individual who removed her one-year-old from her arms and then fled with his cohorts, driving off with her child. She testified that his bandana fell during the altercation, revealing his face and enabling her to identify him. And this testimony directly contradicted his account of what transpired. Beyond that, the officers described the discovery, at the culmination of the high-speed chase, of the one-year-old, crying in the backseat of the crashed white SUV. Based on this evidence, the state produced sufficient evidence to establish, beyond a reasonable doubt, that Mr. Williams knowingly removed the child from the place where she was found—Ms. Tye's residence. *See State v. Oldaker*, 4th Dist. Meigs No. 16CA3, 2017-Ohio-1201, ¶ 8, 46 (holding the state provided sufficient evidence that defendant acted knowingly for purposes of R.C. 2905.01(B)(1) when the defendant forced the victim into the front passenger seat of a vehicle, sitting behind him with a gun to his head, while another individual drove them from the residence to a car-repair shop).

{¶11} Additionally, Mr. Williams challenges the sufficiency of the evidence supporting his firearm specifications under R.C. 2941.141(A), specifically asserting that he lacked the required mental state since he did not realize his companions possessed firearms.

7

But a firearm specification does not contain a specific mens rea of its own; it is a penalty enhancement that attaches to the underlying offense. *See State v. Gilbert*, 8th Dist. Cuyahoga No. 90615, 2009-Ohio-463, ¶ 16, quoting *State v. Briscoe*, 8th Dist. Cuyahoga No. 89979, 2008-Ohio-6276, ¶ 32, fn. 5 (" 'Firearm specifications are penalty enhancements that attach to an underlying offense, [and] thus do not include a specific mens rea of their own.' "); *State v. Cook*, 9th Dist. Summit No. 24058, 2008-Ohio-4841, ¶ 8 ("[A] firearm specification does not constitute a separate offense and therefore does not impose a culpable mental state."). And thus, Mr. Williams's sufficiency argument as to his specifications lacks merit in light of the evidence at hand demonstrating his use of a firearm during the commission of this offense.

{¶12} As to the weight of the evidence, Mr. Williams essentially repackages these arguments, relying heavily on his role as the driver and feigning ignorance as to his companions' firearms and the child's presence in the car until well after fleeing the scene. But credibility of his story was an issue for the trier of fact to determine in light of the evidence before it. *See State v. Williams*, 1st Dist. Hamilton No. C-140199, 2015-Ohio-3968, ¶ 42 ("[T]he weight to be given the evidence and the credibility of the witnesses were for the jury, sitting as the trier of fact, to determine in resolving conflicts and limitations in the testimony[.]").

{¶13} The jury had before it two versions of the story, as we have chronicled above. The jury also heard inconsistencies in Mr. Williams's testimony, at one point admitting on cross-examination that he observed that all three of the other men had guns, but later retreating, maintaining he did not know they were armed. Similarly, the jury observed Mr.

Williams deny on the stand that he had a juvenile record, but then admit to several juvenile adjudications during cross-examination.

{¶14} In light of this evidence, the jury was free to deem Ms. Tye's testimony more credible than Mr. Williams's, especially in light of his inconsistent testimony. *Hendrix,* 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, at ¶ 46 ("In this case, the jury was free to find the testimony of the four victims more credible than [defendant's]."); *State v. Watts*, 1st Dist. Hamilton No. C-180545, 2019-Ohio-4856, ¶ 9 ("While the [trier of fact] heard testimony from [defendant] disputing the state's evidence * * * the trier of fact[] could apportion weight to each party's testimony, and did so here, finding [the victim's] story more persuasive."). Ultimately, based on the record before us, we cannot say this is one of those rare cases in which the trier of fact lost its way, resulting in a manifest miscarriage of justice. Mr. Williams's convictions for kidnapping and his gun specifications were supported by both the weight and sufficiency of the evidence, and therefore we overrule his first and second assignments of error.

## III.

{¶15} Turning to his third assignment of error, Mr. Williams insists that the trial court erred when it failed to merge the firearm specifications accompanying his kidnapping and failure to comply convictions when these offenses arose from the same transaction or occurrence. Here, the jury found Mr. Williams guilty of firearm specifications under R.C. 2941.141(A), having a firearm on his person or under his control while committing his offenses—specifically, while committing his kidnapping and failure to comply with a police signal offenses. Accordingly, R.C. 2929.14(B)(1)(a)(iii) mandated the sentencing court here impose a one-year prison term for both of Mr. Williams's specifications, unless R.C.

2929.14(B)(1)(b) applied. *See State v. Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, 111 N.E.3d 1146, ¶ 8 ("[A]n offender who had a firearm on his person or under his control while committing the offense is subject to a one-year prison term for the specification."); *State v. Isreal*, 12th Dist. Warren No. CA2011-11-115, 2012-Ohio-4876, ¶ 69 ("According to R.C. 2929.14(B)(1)(a)(iii), a sentencing court must impose a one-year sentence when a defendant is convicted of a firearm specification within R.C. 2941.141 (offender had firearm during offense).").

{¶16} Pursuant to R.C. 2929.14(B)(1)(b), the court may not impose more than one sentence for multiple firearm specifications if the underlying felonies (to which the attendant specifications apply) arose from the same act or transaction.[1] *See State v. Like*, 2d Dist. Montgomery No. 21991, 2008-Ohio-1873, ¶ 40 ("However, a court is not authorized to impose more than one sentence for multiple firearm specifications if the specifications refer to the same criminal act or transaction."). For purposes of R.C. 2929.14(B)(1)(b), a "transaction" means " 'a series of continuous acts bound together by time, space and purpose, and directed toward a single objective.' " *State v. Wills*, 69 Ohio St.3d 690, 691, 635 N.E.2d 370 (1994), quoting *State v. Caldwell*, 9th Dist. Summit No. 14720, 1991 WL 259529, *12 (Dec. 4, 1991). In other words, courts generally evaluate whether the offenses and attendant firearm violations occurred at separate times, locations, and to different victims. *See State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 214 ("The Mini Mart offenses, the drive-by shootings, and Arnold's murder occurred on different days and at different locations and involved separate victims."); *State v. Kennedy*, 2d Dist. Clark

---

[1] We note that the exception under division (B)(1)(g) of the statute does not apply in this case; and therefore whether the court was required to merge Mr. Williams's firearm specifications depends on the "same act or transaction" analysis.

No. 2017-CA-100, 2018-Ohio-4997, ¶ 42 (reasoning the offenses to which the "firearm specifications applied were not committed as part of the same act or transaction" because "the shootings occurred at different times and at separate locations").  Notably, when determining whether the defendant committed the felonies as part of the same act or transaction, " '[t]he test is not whether there was a separate animus for each offense; the appro[p]riate consideration is whether the defendant 'had a common purpose in committing multiples crimes' and engaged in a 'single criminal adventure.' " *State v. Newton*, 2017-Ohio-7068, 95 N.E.3d 789, ¶ 13 (8th Dist.), quoting *Like* at ¶ 40; *see State v. Woods*, 1st Dist. Hamilton No. C-060340, 2007-Ohio-1487, ¶ 22 ("In assessing whether multiple firearm specifications are proper, a court should focus on an individual's overall criminal objectives, not on the specific animus for each crime.").

{¶17}  Mr. Williams contends that his kidnapping and failure to comply offenses to which his firearm specifications applied involved a single objective—fleeing the scene of the crime.  In support, Mr. Williams directs our attention to cases where the offenses occurred in the same location and nearly simultaneously, with the courts holding but one criminal objective existed.  *See State v. Moore*, 161 Ohio App.3d 778, 2005-Ohio-3311, 832 N.E.2d 85, ¶ 48 (7th Dist.) (holding the trial court erred when it failed to merge the firearm specifications accompanying the aggravated robbery offenses because the defendant possessed a single criminal objective to rob all persons in the car, not each passenger individually); *State v. Marshall*, 8th Dist. Cuyahoga No. 87334, 2006-Ohio-6271, ¶ 32 (holding the firearm specifications accompanying the aggravated burglary, aggravated

robberies, and two murders were part of the same transaction since the single objective of the defendant was to rob the store).[2]

{¶18} Yet these cases lend Mr. Williams no aid. Unlike the defendants in *Marshall* and *Moore*, Mr. Williams committed the underlying kidnapping and failure to comply offenses at different times and at different locations. After seizing Ms. Tye's child, Mr. Williams and his accomplices piled into the white SUV and sped off away from her residence. It was not until later that the police caught up with the SUV on the highway, directing Mr. Williams to stop. But he refused, prompting a high-speed chase. Although admittedly these offenses occurred close in time, they were not simultaneous and they occurred in different locations. *See State v. Twitty*, 2d Dist. Montgomery No. 18749, 2002-Ohio-5595, ¶ 129 (holding the trial court did not err in refusing to merge the firearm specifications with the accompanying felonious assault, child endangerment, and failure to comply offenses because "[d]efendant's conduct in attempting to flee from the police (count four), occurred several minutes after he had threatened to shoot [the victim] and fired his gun at her and her daughter (counts two and three)."); *Kennedy* at ¶ 42 (finding the trial court did not err in declining to merge the firearm specifications because "the shootings occurred at different times and at separate locations"—the defendant discharging his firearm at one location, leaving the scene to reload his firearm at his own house, then discharging his firearm once again at a completely different residence).

{¶19} Nor did Mr. Williams possess a "common purpose in committing" the offenses. Mr. Williams's purpose during the commission of the kidnapping differed from

---

[2] We do acknowledge that these cases occurred before the legislators added the exception in R.C. 2929.14(B)(1)(g). *See State v. Fortune*, 2015-Ohio-4019, 42 N.E.3d 1224, ¶ 22 (11th Dist.) (discussing the prior version not including the (B)(1)(g) exception).

12

his purpose in failing to comply with the police signal—the latter being for the purpose of evading capture and the former seemingly to gain ransom from Ms. Tye. *See Twitty* at ¶ 129-130 (indicating defendant's purpose for failing to comply, "to evade capture by the police," was different than his purpose for felonious assault and child endangerment when he shot at his girlfriend and her child); *State v. Hackett*, 8th Dist. Cuyahoga No. 83810, 2004-Ohio-5386, ¶ 5 (holding the defendant and his accomplices' "use of guns to terrorize bank customers and employees during the commission of the bank robbery is directed at a different purpose than using the guns to fire on officers in an attempt to escape after the competition of the robbery."). Accordingly, at the moment Mr. Williams failed to halt at the signal of the trailing officers, the objective shifted from kidnapping to evading capture. *See Woods*, 1st Dist. Hamilton No. C-060340, 2007-Ohio-1487, at ¶ 24 (holding the kidnapping offense was not part of the same transaction as the aggravated burglary and robberies because when the defendant ordered the victims be bound and taken to the basement "the criminal objective changed from robbery to kidnapping."). And thus, the kidnapping and failure to comply offenses neither had "a common purpose" nor united towards a "single criminal adventure." *Newton*, 2017-Ohio-7068, 95 N.E.3d 789, at ¶ 13.

{¶20} Because the kidnapping and failure to comply offenses occurred at different locations, at different times, and were directed toward separate objectives, we cannot find the felonies arose from the same act or transaction. Accordingly, the trial court was not beholden to merge the associated firearm specifications for purposes of sentencing, and thus we overrule Mr. Williams's third assignment of error.

IV.

{¶21} In his fourth assignment of error, Mr. Williams posits that his counsel was constitutionally ineffective, primarily because counsel failed to review discovery with him or to adequately convey trial strategy. To succeed on an ineffective assistance of counsel claim, Mr. Williams must demonstrate that (1) trial counsel's performance fell beneath an objective standard of reasonableness, and (2) but for this deficient performance, a reasonable probability exists that the outcome would differ. *See Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.E.2d 674 (1984). In this case, we can skip straight to the prejudice inquiry, pretermitting an assessment of deficiency. *See State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989) ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

{¶22} If counsel had informed him of the relevant evidence and trial strategy, Mr. Williams contends he would have embarked upon a different strategy. But he fails to elucidate what the alternative strategy would have entailed or how that strategy would have impacted the outcome of his case. *See State v. Sanford*, 8th Dist. Cuyahoga No. 84478, 2005-Ohio-1009, ¶ 15 (finding no prejudice because defendant failed to demonstrate "how the outcome of the trial would have been different had counsel employed another strategy[.]"). Conclusory statements that the outcome would have been different, without more, are not enough to carry a defendant's burden on the issue of prejudice. *See State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 95 ("[Defendant's] argument is conclusory, and he has not even attempted to show prejudice under *Strickland*."); *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 191,

14

quoting *Moss v. Hofbauer*, 286 F.3d 851, 864 (6th Cir.2002) ("[Defendant's] 'conclusory allegations are insufficient to justify a finding that an opening statement would have created the reasonable probability of a different outcome in his trial.' "). Mr. Williams accordingly fails to demonstrate a reasonable probability that "but for" the purported errors, the outcome of his trial would have differed. *See Strickland* at 694.

## V.

{¶23}  After considering each of Mr. Williams's assignments of error and based on the foregoing analysis, we overrule his four assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P. J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry this date.