[Cite as *State v. Harris*, 2021-Ohio-371.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                    :       APPEAL NO. C-190576
                                          TRIAL NO. B-1900682
    Plaintiff-Appellee,           :

  vs.                             :       *O P I N I O N.*

DIOVANTAE HARRIS,                 :

    Defendant-Appellant.          :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 10, 2021


*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Alex Scott Havlin,* Assistant Prosecuting Attorney*,* for Plaintiff-Appellee,

*Timothy J. McKenna* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}   After using a firearm to rob a victim, the perpetrator—presumably unaware that the police were searching for him—sent a text message to the victim offering to sell her cheap drugs.  Police capitalized on this blunder to orchestrate a controlled drug buy, which culminated in the arrest of Defendant-Appellant Diovantae Harris.  Mr. Harris now appeals his convictions for aggravated robbery and having weapons under a disability.  We, however, find no merit in his assignments of error and affirm the judgment below.

I.

{¶2}   On New Year's Eve, 2018, Jennifer Raisor—who identified herself at trial as a prostitute—arranged to rendezvous with a new Cincinnati client who responded to one of her online ads.  She agreed to meet the client at 2417 Sunny Hill Drive, also known as Fay Apartments.  When Ms. Raisor first arrived at the address, she could not locate her client, so she drove away.  An ensuing telephone call by her client, however, lured her back.

{¶3}   Ms. Raisor returned to Fay Apartments, finding her client and chatting with him for several minutes in a well-lit parking lot.  When the client began steering her to a darker area toward the back of the lot, however, Ms. Raisor started to suspect foul play.  The client claimed that his baby's mother lived in the front of the building, but this raised further red flags for Ms. Raisor, prompting her to cancel the engagement.  As she turned to walk away, however, the client pulled out a gun and jabbed it in the back of her head.

{¶4}   The client threatened Ms. Raisor that if she moved or said anything, he would "cap" her.  He instructed her to "lay everything on the ground," and took her

2

wallet, phone, purse, and vape. In her wallet, Ms. Raisor carried her late sister's driver's license and social security card. She asked her assailant if she could keep the license because of its sentimental value, but he refused. He handed Ms. Raisor her car keys and instructed her to walk quietly back to the car, or he would shoot. She obliged, getting in her car and pulling away.

{¶5} Lost without her phone, Ms. Raisor struggled to find her way back to her hotel. She drove around looking for highway signs that she recognized. As she wandered, she pulled up behind a dark green car that she thought was acting "all nervous and suspicious." Ms. Raisor believed that she might have stumbled upon her assailant's get-away car, so she pursued the car for a while and jotted down its license plate. When she saw a patrol car, she pulled up beside it and recounted the whole affair to the police officer. Apparently not that concerned, the officer professed to be too busy to help her, and suggested that she call 911 (which proved difficult since her phone had been stolen). Eventually, Ms. Raisor did make it back to her hotel, where she called the police and reported the robbery. She described her assailant as having a "medium" skin tone, no facial hair, and appearing to be "mixed"—possibly Italian and African American.

{¶6} No further developments in the case took place until weeks later, when Ms. Raisor received an unexpected text message on her (new) phone from the same number used to set up the robbery. The text offered to sell drugs at a cheap price, and Ms. Raisor relayed the information to the police. Detective Mark Longworth, who was assigned to investigate the robbery, coordinated with the department's Violent Crime Squad to set up a controlled buy from the number. On February 6, 2019, Officer Jason Bley arranged the buy, and a police informant purchased $40 of (ultimately fake) drugs from an unknown individual. The buy devolved into a foot

chase, as the seller dashed into a nearby building: 2412 Sunnyhill Drive. Officers knocked on the door and surrounded the house. Eventually, Mr. Harris answered the door, at which point the police arrested him.

{¶7} Detective Longworth obtained consent from the lessee of the home—who is also the mother of Mr. Harris's child—to search the premises. Under the couch, police found a pile of IDs, including the license and social security card of Ms. Raisor's late sister. Police also recovered the buy money from the fake drug transaction. Finally—and most significantly—police found a cell phone registered to the number used to set up both the robbery and the drug transaction. Upon searching this cell phone, police discovered hundreds of pictures of Mr. Harris, as well as a screen shot showing Mr. Harris's name, birthday, driver's license number, and address. One photograph of Mr. Harris showed him playing video games in the 2412 Sunnyhill Drive apartment with what appeared to be a handgun next to him. Another screenshot showed an advertisement for Ms. Raisor's escort services.

{¶8} After Mr. Harris's arrest, police prepared a photo lineup and presented it to Ms. Raisor, who positively identified Mr. Harris as her assailant. Mr. Harris was convicted in a jury trial of robbery, aggravated robbery with a firearm specification and having weapons while under a disability. The trial court merged the robbery and aggravated robbery offenses, and the state elected to proceed to sentencing on the aggravated robbery charge.

{¶9} The trial court sentenced Mr. Harris to six years of incarceration for aggravated robbery, two years for weapons under disability, and the mandatory three years for the firearm specification. It set the two-year weapons under disability sentence to run concurrently with the six-year aggravated robbery sentence, and the three-year firearm specification to run consecutively to and prior to the aggravated

4

robbery sentence, for a total sentence of nine years. Mr. Harris now appeals his convictions and his sentences.

## II.

{¶10} Mr. Harris raises four assignments of error on appeal. He challenges the weight and sufficiency of the evidence supporting his convictions, claims that he received ineffective assistance of counsel, and contests the trial court's sentencing findings. We find no merit in these assignments of error and affirm Mr. Harris's convictions and sentences.

## A.

{¶11} To determine whether a conviction is supported by sufficient evidence, we inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Curry*, 1st Dist. Hamilton No. C-190107, 2020-Ohio-1230, ¶ 11. Whether the evidence suffices to sustain a verdict poses a question of law, which we review de novo. *State v. Jackson*, 1st Dist. Hamilton Nos. C-180159 and C-180209, 2020-Ohio-80, ¶ 11.

{¶12} To obtain a guilty verdict for aggravated robbery, the state must prove that Mr. Harris "had a deadly weapon on his person or under his control and either had displayed or had brandished it, indicated that he had possessed it, or used it while attempting or committing a theft offense * * * ." *State v. Todd*, 1st Dist. Hamilton No. C-020559, 2003-Ohio-3056, ¶ 9. To prove a three-year firearm specification, the state had to "prove beyond a reasonable doubt that the offender possessed an operable firearm" and that he "displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense."

*State v. Brown*, 2019-Ohio-3349, 141 N.E.3d 661, ¶ 10-12 (1st Dist.), citing R.C. 2941.145(A). *See* R.C. 2929.14(B)(1)(a)(ii). Finally, to prove a weapons under disability charge, the state had to show that Mr. Harris "knowingly acquire[d], ha[d], carrie[d], or use[d] any firearm or dangerous ordnance and * * * 'ha[d] been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.' " *State v. Vaughn*, 2019-Ohio-1026, 133 N.E.3d 997, ¶ 23 (2d Dist.), quoting R.C. 2923.13(A)(3). The parties stipulated at trial that Mr. Harris had a prior conviction for a drug offense.

{¶13} There is little doubt that the person who robbed Ms. Raisor could be convicted for aggravated robbery with a firearm specification. Although defense counsel posited that the gun used in the robbery might have been fake, Ms. Raisor testified that the gun (which she saw clearly in the lit parking lot) appeared "very real" to her. The assailant's threats to "cap" Ms. Raisor certainly bolstered that conclusion, in line with our prior authority on this question. *See Brown* at ¶12 (the state may use "circumstantial evidence," such as specific threats to use a firearm, to prove the defendant's possession of an operable firearm). Mr. Harris's sufficiency of the evidence argument thus hangs entirely on whether the evidence could identify *him* as the gun-wielding assailant.

{¶14} On appeal, Mr. Harris insists that several pieces of evidence undercut the reliability of Ms. Raisor's identification. He places particular emphasis on her initial description to police of her assailant as a "mixed" man with "medium" skin tone and no facial hair, arguing that his dark complexion, goatee, and facial tattoos should eliminate him as a suspect. He further depicts Ms. Raisor's account of following a green car from the crime scene as "fantastical," and her demeanor on the stand as "laughing and joking around."

{¶15} But Ms. Raisor explained and addressed each of these issues in her testimony, and she repeatedly affirmed her prior identification of Mr. Harris. *See State v. Peelman*, 1st Dist. Hamilton No. C-090686, 2010-Ohio-4472, ¶ 8 (witness's repeated identification of defendant as the robber was sufficient to convict). Her identification was corroborated by strong circumstantial evidence that Mr. Harris was involved in the robbery, including his connections to the phone used to set up the robbery, the location of the robbery just a few doors down from his residence, and his unexplained possession of Ms. Raisor's sister's ID and social security card. *See State v. Maldonado*, 8th Dist. Cuyahoga No. 108907, 2020-Ohio-5616, ¶ 31 ("The state may use direct evidence, circumstantial evidence, or both, in order to establish the elements of a crime."). A rational juror could certainly review the evidence and testimony in this case and find it sufficient to identify Mr. Harris as the assailant. We consequently overrule Mr. Harris's first assignment of error.

B.

{¶16} Next, when reviewing a challenge to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. 190508, 2020-Ohio-4283, ¶ 16, citing *Thompkins* at 397.

{¶17} Mr. Harris's weight of the evidence challenge fails for many of the same reasons as his sufficiency challenge. His argument boils down to belittling the victim's testimony and inviting us to disregard it.

{¶18} To be sure, there are aspects of Ms. Raisor's testimony that the defense could (and did) use to question the accuracy of her identification. But her testimony

certainly cannot be characterized as "so unreliable or unworthy of belief that the trier of fact lost its way and created a manifest miscarriage of justice * * * ." *State v. Hsu*, 2016-Ohio-4549, 66 N.E.3d 1124, ¶ 41 (1st Dist.). The jury had an opportunity to observe Ms. Raisor's demeanor on the stand. Her account of events was thoroughly explored and challenged on cross-examination. "[T]he jury 'is the sole judge of the evidence and the credibility of the witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest.' " *Todd*, 1st Dist. Hamilton No. C-020559, 2003-Ohio-3056, at ¶ 12, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The jury evidently found Ms. Raisor to be a credible witness, and it is not our place to overturn that credibility determination on appeal. We therefore overrule Mr. Harris's second assignment of error.

C.

{¶19} In his third assignment of error, Mr. Harris maintains that his trial counsel's failure to employ an expert witness to conduct fingerprint testing on the phone and ID recovered by police constituted ineffective assistance of counsel. To succeed in this Sixth Amendment claim, Mr. Harris "must demonstrate that (1) trial counsel's performance fell beneath an objective standard of reasonableness, and (2) but for this deficient performance, a reasonable probability exists that the outcome would differ." *State v. Williams*, 1st Dist. Hamilton No. C-180588, 2020-Ohio-1368, ¶ 21, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.E.2d 674 (1984). In reviewing a claim for ineffective assistance of counsel, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689.

{¶20} Mr. Harris's ineffective assistance claim fails under both of the *Strickland* prongs. In the first place, the "decision whether to call a witness is generally a matter of trial strategy * * * ." *State v. Krzywkowski*, 8th Dist. Cuyahoga Nos. 83599, 83842 and 84056, 2004-Ohio-5966, ¶ 20, citing *State v. Williams*, 74 Ohio App.3d 686, 694, 600 N.E.2d 298 (8th Dist.1991). "[I]n many criminal cases trial counsel's decision to not seek expert testimony 'is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant.' " *State v. Rutter*, 4th Dist. Hocking No. 02CA17, 2003-Ohio-373, ¶ 27, quoting *State v. Glover*, 12th Dist. Clermont No. CA2001-12-102, 2002-Ohio-6392, ¶ 25. If counsel in this case had retained an expert to test the phone and ID for fingerprints, and Mr. Harris's fingerprints appeared on either item, that fact would have torpedoed the defense's main argument of mistaken identity. The decision not to risk this outcome—and to question Mr. Harris's connection to the phone and ID through other means at trial—falls "squarely within the ambit of trial strategy." *State v. Pennington*, 1st Dist. Hamilton Nos. C-170199 and C-170200, 2018-Ohio-3640, ¶ 41.

{¶21} Next, even assuming that the fingerprint test results would have revealed none of his prints, Mr. Harris cannot show prejudice by the absence of fingerprint evidence at trial. The state obviously did not need to prove that Mr. Harris's fingerprints were on the phone or ID to convict; it had additional inculpatory evidence at its disposal. And testimony that Mr. Harris's fingerprints were *not* on the phone or ID—or that another individual's fingerprints were—would hardly exonerate his involvement in the robbery. Mr. Harris's contention in his appellate brief that if his prints were not on the cell phone, then he would have been found not guilty, represents little more than "pure[] speculat[ion]." *Id.* at ¶ 38. Such

"[c]onclusory statements that the outcome would have been different, without more, are not enough to carry a defendant's burden on the issue of prejudice." *Williams,* 1st Dist. Hamilton No. C-180588, 2020-Ohio-1368, at ¶ 22.

{¶22} Because trial counsel's decision not to retain an expert witness to conduct fingerprint testing fell within the scope of reasonable trial strategy, and Mr. Harris has not shown that the trial outcome would have differed with the benefit of this evidence, we overrule his third assignment of error.

D.

{¶23} In his final assignment of error, Mr. Harris contends that the record below does not support the sentencing court's findings. Although he concedes that his nine-year aggregate sentence fell within the statutory range, he insists that the specific circumstances of his crime—including the fact that no one was hurt and all stolen goods were recovered—cries out for the minimum sentence. He urges us to remand his case for imposition of a minimum sentence of six years, pursuant to our power under R.C. 2953.08(G)(2)(a) to "reduce or otherwise modify" a sentence that is unsupported by the record.

{¶24} "Before a reviewing court can modify or vacate a felony sentence, it must clearly and convincingly find that the sentence is contrary to law or that the record does not support the trial court's findings." *State v. Hutcherson*, 1st Dist. Hamilton No. C-190627, 2020-Ohio-5321, ¶ 9. In this case, we see no question about the propriety of consecutive sentences in light of R.C. 2929.14(C)(1)(a)'s mandate that the three-year firearm specification sentence run "consecutively to and prior to" the sentence for aggravated robbery. The only issue remaining is whether the trial court erred by imposing a six-year sentence for aggravated robbery, rather than the three-year minimum. *See* R.C. 2929.14(A)(1)(a).

{¶25} The Ohio Supreme Court recently clarified that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, Slip Opinion No. 2020-Ohio-6729, ¶ 42. Our review of whether a sentence is supported by the record under R.C. 2953.08(G)(2) is limited to the specific statutes enumerated in R.C. 2953.08(G)(2)(a), which include: R.C. 2929.13(B), R.C. 2929.13(D), R.C. 2929.14(B)(2)(e), R.C. 2929.14(C)(4), and R.C. 2929.20(I). *Id.* at ¶ 31, 37.

{¶26} In his brief, Mr. Harris fashions no arguments concerning the five enumerated provisions in R.C. 2953.08(G)(2)(a). We have reviewed the listed statutes independently and do not believe that any apply to the record at hand. Insofar as Mr. Harris's arguments about a lack of physical injury to Ms. Raisor implicate the sentencing factors in R.C. 2929.12, the recent *Jones* decision forecloses any R.C. 2953.08(G)(2) modification of his sentence on R.C. 2929.11 or 2929.12 grounds. Even if Mr. Harris had properly raised an R.C. 2929.12 argument, the trial court's extensive colloquy with counsel and Mr. Harris at sentencing—as well as its findings concerning Mr. Harris's prior convictions and incarceration—support its decision to impose more than the minimum sentence. We therefore overrule Mr. Harris's fourth assignment of error.

III.

{¶27} Because we find no merit in any of Mr. Harris's four assignments of error, we affirm his convictions and sentences.

Judgment affirmed.

**ZAYAS, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.